Joseph Essie **FISHER**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 23715.**

United States Court of Appeals
Fifth Circuit.

Aug. 11, 1967.

**32**

Doyle Curry, Marshall, Tex., Emmett Colvin, Jr., Dallas, Tex., for appellant.

Wm. Wayne Justice, U. S. Atty., Tyler, Tex., Sidney M. Glazer, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before BELL, GODBOLD and DYER, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

Appellant Fisher was indicted in the District Court for allegedly transporting forged and counterfeit American Express Company money orders in interstate commerce in violation of Title 18 U.S.C.A. § 2314. The nine count indictment involved Fisher and three additional defendants, Anderson, Thomas, and Smith. Fisher was charged in three counts with substantive violations and in another count with conspiracy. Fisher was acquitted on the substantive counts but convicted of conspiracy. Anderson, charged in all nine counts, was acquitted by the jury; Smith, charged in all nine counts, was convicted on all counts; and Thomas, charged only in the conspiracy count, was also convicted. Only Fisher appeals.

The errors assigned, in the main, arise out of the difficulties which ensued because of the joint nature of the trial and the posture of the case from the standpoint of the defenses asserted. Anderson, a lawyer, according to the government's theory of the case, was the instigator and ringleader of the forged or counterfeit money order racket or ring. It was his idea; he procured the money orders, and the other defendants participated by passing the money orders. Fisher, Smith, and Thomas all confessed and Anderson did not. Moreover, Anderson testified in his own defense but the others did not. Anderson's counsel employed such stratagems in his defense as calling Fisher to the stand as a witness with the result that Fisher had to claim his Fifth Amendment right not to testify in the presence of the jury. This stratagem is assigned as error by Fisher but in the view we take of the case we do not reach a consideration of it. Another circumstance which undoubtedly redounded to the benefit of Anderson was the fact that his counsel acted as the leading counsel or spokes-

man during the trial of the case for all of the defendants. He was in charge of objections and cross-examination and this accentuated or emphasized Anderson's defense as against the defenses offered by the other three defendants.

The trial was replete with objections based on the admission of the confessions of Fisher, Thomas, and Smith. In addition to the contention that they were given involuntarily, other objections were based on the fact that the names of the co-defendants should have been deleted from each confession so as to avoid any implication by one declarant of another. It is asserted that the court should have given a cautionary instruction in the absence of deletion, although no such instruction was requested. We find it unnecessary to reach these contentions, save that of whether the Fisher confession was illegally obtained, since they are not likely to recur on a new trial. We conclude that Fisher is entitled to a new trial because of procedural difficulties which arose in the determination or, more properly, in the non-determination of the voluntariness of his confession.

■ Aside from that question, there is one other error assigned which must be considered. Certain statements made by co-defendant Thomas to a named co-conspirator who was not charged, were admitted in evidence against all of the defendants over the objection that the evidence was admissible only against Thomas. The statements were admitted on the theory that they were made in furtherance of the conspiracy. The statements consisted of Thomas soliciting the witness to pass some of the false money orders and certain statements about Anderson being his source of supply for the money orders. The statements did not implicate Fisher but, in any event, they were made in furtherance of the conspiracy. See Orser v. United States, 5 Cir., 1966, 362 F.2d 580, 585. These statements were made during the continuation of the common enterprise in crime and were admissible against all of the participants in the enterprise.

With respect to the question of the voluntariness of the confession given by Fisher to an agent of the FBI, the matter becomes more complicated. We begin with the fact that there was not one confession but two and also an additional written statement which bolstered the two confessions. One confession was given to a Texas ranger on November 13, 1964. This ranger, apparently in charge of investigating the money order ring, first arrested Fisher on a warrant issued in Harrison County, Texas on November 7, 1964 and he immediately made bond and was released. Six days later, the same ranger arrested Fisher on a warrant issued in Jasper County, Texas. He was taken from his home in Marshall, Texas to Jasper, placed in the city jail, then transferred to the county jail and was admittedly interrogated for several hours. Fisher's story makes out a case of near mayhem or, to say the least, an atrocity. On the other hand, the ranger's side of the story is that everything was sweetness and light. Whatever happened, whether in the county jail in Jasper or at a cabin retreat in the woods, the afternoon produced a detailed confession in which the whole story of the money order ring was disclosed. Fisher was again admitted to bond, immediately after signing the confession, and the ranger rode him back to his home in Marshall.

Fisher reported what had happened to his co-defendant, Anderson the lawyer. Anderson caused a complaint to be filed with the Justice Department based on the alleged mistreatment of Fisher by the Texas ranger and the local sheriff and his deputies at Jasper in obtaining the confession. The complaint was investigated to some extent by the FBI.

The next significant event took place on December 10, 1964. On that date Fisher was arrested for the third time by the same Texas ranger on a warrant from still another county, Nacogdoches, and was taken to jail in that county where he remained until December 13 when he telephoned the ranger with the statement that he wanted to talk with

him. On this occasion the ranger asked an agent of the FBI to accompany him and they went to Nacogdoches to see Fisher. Upon arriving at the jail they found that Fisher had been transferred to a jail at Lufkin, Texas and they journeyed on to Lufkin to see him. They conferred with Fisher for at least six hours according to the testimony of the ranger, and Fisher gave a new confession in writing to the ranger and the FBI agent. They both witnessed it. This confession was admitted in evidence against Fisher. During the same interview, but outside the presence of the ranger, Fisher gave an additional statement to the FBI agent in which he exonerated the ranger from the charge of mistreatment which he had previously filed with the Justice Department. This statement was also admitted into evidence and its admission is not assigned as error.

All of the defendants filed motions to suppress the confessions of Fisher, Thomas, and Smith and the court conducted an evidentiary hearing on the motions prior to trial. Rulings on the motions were deferred pending receipt of briefs and, as near as we can tell from the record, no formal rulings were ever entered on the motions. The record shows a docket entry under date of November 1, 1965 which states that the motions to suppress were overruled and denied " * * * with the understanding that the United States Attorney will not use any matter suppressed". This entry is unintelligible. The trial, however, began on November 2 and one indication from the record is that the district judge, because of the multitudinous bases for the original motions as they were twice amended, overruled the motions to suppress as a whole with the understanding that separate rulings would be made during the trial as to any of the confessions that might be offered. There is, nevertheless, some indication that the judge intended to suppress the confession given by Fisher to the Texas ranger on the Jasper occasion. It was not offered but this indication comes from a statement by the court during the trial that the court had suppressed "any other confession other than those taken by members of the FBI * * * ".

■ The fact of the hearing on the motions to suppress and the failure to definitely rule on the motions lead to a procedural void when the last or so-called FBI confession was introduced. The court made no determination on its own of its voluntariness at the time but simply admitted the confession in the face of the objection, among others, that it had been obtained involuntarily. There was no consideration whatever of whether the confession was the fruit of some past illegality on the part of the Texas ranger which resulted in the first confession although this was clearly an issue. The same Texas ranger participated with the FBI agent in obtaining the confession which was introduced. In short, we conclude that Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908; and Sims v. State of Georgia, 1967, 385 U.S. 538, 87 S.Ct. 639, 17 L. Ed.2d 593, were not followed by the District Court. Jackson v. Denno requires that a trial court in the circumstances here follow a procedure which is " * * * fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of the disputed facts upon which the voluntariness issue may depend." Sims v. State of Georgia holds that the trial judge's conclusion of voluntariness must appear from the record with unmistakable clarity. These standards were not met in this case. There is simply no clear cut determination of the voluntariness of the confession.

While a remand for a hearing on this one question might be adequate under some circumstances, cf. Jackson v. Denno, supra; Killian v. United States, 1961, 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed. 2d 256, 266; and State of Texas v. Graves, 5 Cir., 1967, 380 F.2d 676, a new trial is also proper. See United States v. Carignan, 1951, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48. It would be difficult indeed to resolve the question here on

the present record. The issue is caught up in the joint trial and in the hearing on the motions to suppress both of Fisher's confessions and the confessions of defendants Thomas and Smith. Under the circumstances Fisher should and will be accorded a new trial and any issue concerning the voluntariness of the confession or confessions may then be considered.

Whether the court suppressed the original confession given at Jasper to the ranger is, as stated, not absolutely clear. See Davis v. State of North Carolina, 1966, 384 U.S. 737, 86 S.Ct. 1761, 16 L. Ed.2d 895, on the question of a confession being the involuntary end product of coercive influences. On the question of whether, assuming that the first confession was involuntary, its illegality carried over to and tainted the subsequent confession given to the ranger and the FBI agent, cf. Leyra v. Denno, 1954, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948; and Anderson v. United States, 1943, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829.

■ It is necessary for the District Courts to carefully comply with the teachings of Jackson v. Denno, supra; and Sims v. State of Georgia, supra. This means that in the course of a trial where the prosecution seeks to introduce a confession over the objection that it was obtained through coercion or that it was otherwise involuntarily given, the court should have the jury withdrawn and then take evidence upon the confession and its factual setting. The court should follow either the Wigmore rule or the Massachusetts rule in its procedure.

Jackson v. Denno sets out the three different rules followed in the courts of this country in considering the admissibility of confessions. The New York rule was held invalid but this circuit has never approved that rule. We have approved both the Wigmore and the Massachusetts rule. Jackson v. Denno, Appendix B to dissenting opinion of Mr. Justice Black. The Wigmore rule leaves admissibility to the trial judge and credibility and weight, if the confession is admitted, to the jury. We approved this rule in Andrews v. United States, 5 Cir., 1962, 309 F.2d 127, 129; Schaffer v. United States, 5 Cir., 1955, 221 F.2d 17, 21, 54 A.L.R.2d 820, and Patterson v. United States, 5 Cir., 1950, 183 F.2d 687, 689–690. Under the Massachusetts rule, both the trial judge and the jury pass on the question of voluntariness. We have approved this rule on two occasions. See Duncan v. United States, 5 Cir., 1952, 197 F.2d 935, 936–37; and Wagner v. United States, 5 Cir., 1940, 110 F.2d 595, 596.[1]

Reversed and remanded for further proceedings not inconsistent herewith.

---

1. Cf. the procedure adopted by the Court of Appeals for use in the circuit in United States v. Inman, 4 Cir., 1965, 352 F.2d 954.